UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------x
NANCY SMITH, :
an individual, :
 :
      Plaintiff, : **CASE NO: 2:17-cv-7267-SM-JCW**
 :
vs. : JUDGE: SUSIE MORGAN
 :
 :
BOARD OF COMMISSIONERS OF THE : MAGISTRATE: JOSEPH C. WILKINSON
LOUISIANA STADIUM AND :
EXPOSITION DISTRICT, as the political :
entity which owns the Superdome; :
KYLE FRANCE, in his official capacity as :
chief executive of the BOARD OF :
COMMISSIONERS OF THE LOUISIANA :
STADIUM AND EXPOSITION DISTRICT; :
SMG; LIVE NATION WORLDWIDE, :
INC.; and BOX OFFICE TICKET :
CENTER, LLC, :
 :
      Defendants :
---------------------------------------------------------x

## **FIRST AMENDED COMPLAINT**[1]

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- George H. W. Bush, July 26, 1990

Plaintiff, NANCY SMITH, by and through her undersigned counsel, hereby files this Complaint and sues the BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, as the political entity which owns the Mercedes-Benz Superdome (hereinafter referred to as "BOARD"), for damages, injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §

---

1 This First Amended Complaint is filed as of right pursuant to Rule 15(a)(1)(A).

12131 *et seq.* (hereinafter "Americans with Disabilities Act" or "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (hereinafter "Rehabilitation Act"), and the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 *et seq.*, (hereafter "LCHR"); sues SMG for declaratory and injunctive relief, attorneys' fees, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the LCHR; sues KYLE FRANCE (hereinafter referred to as "FRANCE"), in his official capacity as chairperson and chief executive of the BOARD, for injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the ADA, the Rehabilitation Act, and the LCHR; sues LIVE NATION WORLDWIDE, INC. (hereinafter referred to as "LIVE NATION WORLDWIDE") for declaratory and injunctive relief, attorneys' fees, and costs pursuant to Title III of the ADA and the LCHR; and sues BOX OFFICE TICKET CENTER, LLC (hereinafter referred to as "TICKET CENTER") for declaratory and injunctive relief, attorneys' fees, and costs pursuant to Title III of the ADA and the LCHR, and, in support thereof, states as follows:

## JURISDICTION AND PARTIES

1. This is an action for relief pursuant to Title II and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter referred to as "Americans with Disabilities Act" or "ADA"), the Rehabilitation Act (, 29 U.S.C. §794, *et seq.* (hereinafter referred to as "Rehabilitation Act"), and the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 *et seq.*, (hereafter "LCHR").

2. This Court is vested with original jurisdiction over the Federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as the Federal claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property at issue in this lawsuit is located in the Parish of Orleans, in the Eastern District of Louisiana.

4. Plaintiff, NANCY SMITH, (hereinafter referred to as "MS. SMITH"), is a resident of Hinds County, in the State of Mississippi.

5. MS. SMITH is a qualified individual with a disability under the ADA. MS. SMITH's left leg was amputated via a complete hip disarticulation in June, 2015, as the result of a necrotizing fasciitis infection.

6. Due to her disability, MS. SMITH is substantially impaired in several major life activities, including walking, standing, and bending, and relies primarily on a wheelchair for mobility, but occasionally utilizes crutches with or without a prothesis.

7. Upon information and belief, the BOARD is the political entity which owns the real property, improvements, and programs which are the subject of this action, to wit: the Mercedes-Benz Superdome, located at 1500 Sugar Bowl Drive, New Orleans, LA 70112 (hereinafter "Superdome" or "the Property").

8. Upon information and belief, KYLE FRANCE, named in his official capacity as the chairman of the BOARD, is the official with chief executive power with respect to the BOARD, and bears responsibility in his official capacity as chief executive for administering, operating, and maintaining the BOARD'S public goods and services.

9. Upon information and belief, SMG is a partnership issued charter number 34816755L by the Louisiana Secretary of State and doing business in Orleans Parish, Louisiana.

10. Upon information and belief, SMG is domiciled at 300 Conshohocken State Road, Ste. 450, West Conshohocken, PA 19428, with a Louisiana principal place of business located in New Orleans, Louisiana.

11. Upon information and belief, pursuant to an agreement between SMG and the BOARD, SMG operates the programs, services, accommodations which are offered at the Property.

12. Upon information and belief, LIVE NATION WORLDWIDE is a foreign corporation issued charter number 36798261F by the Louisiana Secretary of State and doing business in Orleans Parish, Louisiana.

13. Upon information and belief, LIVE NATION WORLDWIDE is domiciled at 3411 Silverside Rd. #104 Rodney Building, Wilmington, DE 19810, with a Louisiana principal place of business located in Mandeville, Louisiana.

14. Upon information and belief, LIVE NATION WORLDWIDE operates and produces live music concerts and entertainment events at the Superdome, in Orleans Parish.

15. Upon information and belief, during LIVE NATION WORLDWIDE concerts and events, LIVE NATION WORLDWIDE operates the programs, services, and accommodations offered at the Superdome.

16. Upon information and belief, TICKET CENTER is a Florida limited liability company and online ticket marketplace whose internet activities include doing business in Orleans Parish, Louisiana.

17. All DEFENDANTS are obligated to comply with the ADA and the LCHR; the BOARD and FRANCE are obligated to comply with the Rehabilitation Act.

18. Upon information and belief, all DEFENDANTS are individually and/or vicariously responsible for the violations of the ADA, the LCHR, and/or the Rehabilitation Act which are at issue in this litigation.

### COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AS TO SMG, LIVE NATION WORLDWIDE, AND TICKET CENTER

19. MS. SMITH realleges and reavers Paragraphs 1 - 26 as if they were expressly restated herein.

20. The Property is a place of public accommodation, subject to the ADA, generally located at 1500 Sugar Bowl Drive, New Orleans, LA 70112.

21. The Superdome is a domed events and exhibition venue, located in the Central Business District of New Orleans, Louisiana.

22. Upon information and belief, LIVE NATION WORLDWODE organizes, promotes, and produces various live concerts in the Superdome, featuring a variety of popular music artists.

23. Upon information and belief, TICKET CENTER offers internet sales of tickets to live entertainment events at the Superdome.

24. In addition to hosting live music concerts, the Superdome is used for other purposes such as sporting events other live entertainment events.

25. MS. SMITH enjoys visiting New Orleans to attend live entertainment events and intends to return to the Superdome to see shows and watch live events.

26. MS. SMITH has visited the Property in the past and plans to visit the Property again in the near future, as a patron, visitor, and ADA tester.

27. On or about April 2, 2016, MS. SMITH purchased a ticket through for the Guns N' Roses: Not In This Lifetime Tour performance, which was to be held in the Superdome on July 31, 2016. Rather than rely solely on the online representations regarding the availability of accessible seating, MS. SMITH took the extra time and effort to make an inquiry by phone to ensure that the tickets she purchased would secure an accessible seat for herself as well as an adjoining seat for her companion.

28. Upon information and belief, MS. SMITH purchased accessible seats while on the phone with a TICKET CENTER customer support representative.

29. On July 31, 2015, the day of the Guns N' Roses concert, MS. SMITH arrived at the Superdome with her companion before the show began. While navigating through the Superdome in her wheelchair, MS. SMITH and her companion experienced difficulty locating their ticketed seats, primarily due to the absence of accessible routes. Specifically, MS. SMITH and her companion were only able, after making several inquiries with event staffers, to find one elevator leading to the ground-floor level where the ticketed seats were located. Once MS. SMITH and her companion arrived on the ground-floor level, there was no accessible route from the entrance doors to the area where their ticketed seats were located. As a result, MS. SMITH's companion had to push her wheelchair and help navigate through heavy crowds and foot traffic.

30. Upon information and belief, there were no accessible restrooms on the ground-floor level where MS. SMITH's ticketed seats were located; only inaccessible portable toilets were provided for use by patrons.

31. The configuration of the seats on the ground-floor level did not match a diagram of the venue MS. SMITH viewed online at the time of ticket purchase. MS. SMITH's companion had to inquire with event staff about where the ticketed seats were located, and they were directed to an ordinary (*i.e.*, non-accessible) seat. The route to the ticketed seat was not sufficiently wide for MS. SMITH to freely navigate her wheelchair, causing her to inadvertently run over the foot of another patron, whom MS. SMITH later realized was also a wheelchair user sitting in an ordinary seat.

32. Once MS. SMITH arrived at her ticketed seat, which she specifically purchased based on TICKET CENTER's representations that it was accessible, she saw that there was no empty floorspace designated for wheelchair users. Instead, a female event staffer instructed MS. SMITH to transfer out of her wheelchair into the ordinary seat. MS. SMITH was told by the event staffer that she would have to take MS. SMITH's wheelchair. MS. SMITH was shocked and protested politely, and so did her companion. The event staffer responded that she had to take the wheelchair and that it would be stored with those of other wheelchair-using patrons. Feeling that she had no choice in the matter if she wanted to watch the concert, MS. SMITH reluctantly allowed her wheelchair to be taken.

33. The event staffer took MS. SMITH's wheelchair away and stored it out of sight. Unable to see her primary means of mobility (MS. SMITH also had her crutches with her, which she was able to keep in her possession), MS. SMITH was fearful of her ability to escape the venue in the event of an emergency. MS. SMITH was also anxious about the procedure she should follow in the event she needed to use the restroom during the concert. MS. SMITH was additionally anxious about the possibility that her wheelchair might get stolen or damaged while it was stored away from her and out of her sight. Even though MS.

SMITH had her crutches, she was not confident in her ability to ambulate in them in the dimly-lit, crowded atmosphere.

34. MS. SMITH was unable to fully relax and enjoy the concert due to her preoccupation with the fears and anxieties regarding her wheelchair being taken from her.

35. MS. SMITH's enjoyment of the concert was further diminished by her inability to see the stage. Ambulatory individuals were also in the ground-floor seating area all around MS. SMITH's ticketed seat. These individuals were continuously standing and dancing in ways that disrupted MS. SMITH's line of sight to the performance area. Event staffers were also standing around in ways that blocked MS. SMITH's line of sight.

36. Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

37. Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a), 36.203(a), 36.302(a).

38. The ADA's implementing regulations contain specific mandates for public accommodations regarding ticketing, accessible seating, and ticket sales. 28 CFR § 36.302(f).

39. By failing to provide an accessible route or a wheelchair space, and failing to protect the line of sight for disabled individuals in the wheelchair accessible seating area, SMG, and/or LIVE NATION WORLDWIDE effectively precluded wheelchair users such as MS.

SMITH from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 36.201(a), 36.202(b), 36.204, 36.302(a), and 36.302(f).

40. By failing to adequately describe the features of available accessible seating in enough detail to reasonably permit MS. SMITH to assess whether the location of her ticketed seats would meet her accessibility needs, LIVE NATION WORLDWIDE, and/or TICKET CENTER failed to comply with the specific requirements of 28 CFR § 36.302(f).

41. At the July 31, 2016 Guns N' Roses concert, SMITH was further discriminated against by being subjected to the humiliation, fear, and anxiety of having her primary means of mobility taken from her. There is simply no analogous experience to which an ambulatory patron could have been subjected; no adequate comparison can be made for ambulatory individuals.

42. MS. SMITH fears that if she returns to the Property, she would again be subjected to discrimination on the basis of her disability.

43. MS. SMITH intends on traveling to the Property in the near future to attend concerts, and also to see if SMG, and/or LIVE NATION WORLDWIDE have modified their discriminatory policies, practices, and procedures.

44. Upon information and belief, modification of the policies, practices, and/or procedures of SMG, and/or LIVE NATION WORLDWIDE would provide MS. SMITH an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which SMG, and/or LIVE NATION WORLDWIDE offer to the general public.

45. Independent of her intent to return as a patron to the Property, MS. SMITH additionally intends to return as an ADA tester to determine whether the policies, practices, and procedures which are the subject of this suit have been remedied.

46. MS. SMITH has been obligated to retain the undersigned counsel for the filing and prosecution of this action. MS. SMITH is entitled to have her reasonable attorneys' fees, costs, and expenses paid by SMG, LIVE NATION WORLDWIDE, and/or TICKET CENTER pursuant to 42 U.S.C. § 12205.

### COUNT II: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AS TO THE BOARD AND FRANCE

47. MS. SMITH adopts and re-alleges the allegations contained in paragraphs 1-46 as if fully stated herein.

48. MS. SMITH continues to desire to visit the Property, but fears that she will experience serious difficulty again in light of the failures of SMG and/or LIVE NATION WORLDWIDE to make adequate and sufficient accommodations for MS. SMITH as a wheelchair user. As the owner of the Property, the BOARD and FRANCE are vicariously liable for any discrimination which occurs at the Property under the ADA by SMG, and/or LIVE NATION WORLDWIDE.

49. The BOARD and FRANCE have failed to adopt and implement adequate and sufficient policies and procedures and are therefore vicariously liable for all policies and procedures which are used by SMG, and/or LIVE NATION WORLDWIDE at the Property that deny MS. SMITH meaningful access to the goods, services, and programs which are offered at the Property.

50. Upon information and belief, the BOARD and FRANCE control the seating layout at the Property and/or provide the seating infrastructure at the Property, such that they are independently liable for ADA violations at the Property.

51. The BOARD and FRANCE have discriminated against MS. SMITH by denying her full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by 42 U.S.C. §12132 and its implementing regulations at 28 C.F.R. § 35.101 *et. seq.*

52. Specifically, the actions set forth in paragraphs 1-46 show that SMG, and/or LIVE NATION WORLDWIDE are effectively excluding wheelchair patrons from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 35.130(a), 35.130(b)(1)(i), 35.130(b)(1)(ii), 35.130(b)(3)(i), and 35.130(b)(7)(i).

53. The BOARD and FRANCE have discriminated against MS. SMITH and others similarly situated in violation of the ADA by excluding and/or denying MS. SMITH the full and equal benefits of their services, programs, and/or activities by failing to, *inter alia*, make adequate and sufficient accommodations for mobility impaired individuals such as MS. SMITH, as detailed above in paragraphs 1-46.

54. Upon information and belief, the BOARD and FRANCE continue to discriminate against MS. SMITH, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals.

55. Upon information and belief, MS. SMITH, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and/or

activities of the BOARD, and have otherwise been discriminated against and damaged by the BOARD and FRANCE because of the BOARD's and FRANCE'S discrimination, as set forth above. MS. SMITH and all others similarly situated will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the ADA as requested herein.

56. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

57. MS. SMITH has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs, and litigation expenses from the BOARD and FRANCE pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

58. MS. SMITH is without adequate remedy at law and is suffering irreparable harm.

59. Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant MS. SMITH's injunctive relief including an order that the BOARD and FRANCE alter the facilities at Property and alter their policies at the Property to make the programs and/or activities offered there readily accessible to and useable by MS. SMITH and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the BOARD and FRANCE cure their violations of the ADA.

### COUNT III: VIOLATION OF THE REHABILITATION ACT AS TO THE BOARD AND FRANCE

60. MS. SMITH adopts and re-alleges the allegations contained in paragraphs 1-59 as if fully stated herein.

61. MS. SMITH brings this claim against BOARD and FRANCE, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

62. The Rehabilitation Act provides that:

    No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

63. Upon information and belief, as set forth herein, the BOARD and FRANCE have violated the Rehabilitation Act by intentionally excluding MS. SMITH, solely by reason of her disabilities, from the participation in, and denying her the benefits of, and have otherwise subjected her to discrimination under, the BOARD'S and FRANCE'S programs and activities.

64. Upon information and belief, a non-exclusive list of the BOARD's and FRANCE'S violations of the Rehabilitation Act and discriminatory conduct against MS. SMITH are evidenced by:

    A. denying MS. SMITH access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

    B. by otherwise limiting MS. SMITH in her enjoyment of the rights, privileges, advantages and opportunities which are enjoyed by individuals without

disabilities who receive aids, benefits and services offered by the BOARD AND FRANCE;

C. making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and activities offered by the BOARD and FRANCE at the Property;

D. failing to administer services, programs, and activities in the most integrated setting appropriate to the needs of MS. SMITH;

E. excluding MS. SMITH from participation in, and the benefits of, the services, programs, and activities offered by the BOARD and FRANCE, as a result of the BOARD's and FRANCE'S Property being inaccessible to or unusable by MS. SMITH; and

F. failing to design and implement new policies, or make alterations to existing policies, which would permit individuals with disabilities to participate in the BOARD's and FRANCE'S activities and programs.

65. Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which MS. SMITH is more likely than not going to encounter upon her future visits there. MS. SMITH brings this action:

A. to redress injuries suffered as a result of the BOARD's and FRANCE'S discriminatory actions and inactions set forth herein;

B. to reasonably avoid further and future injury as a result of the BOARD's and FRANCE'S ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Rehabilitation Act;

C. to ensure the BOARD's and FRANCE'S Property is accessible as required by the relevant applications of Title II of the ADA;

D. to be made whole and ensure future compliance; and

E. to reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

66. Only through a complete inspection of the Property and related facilities, undertaken by MS. SMITH and/or her representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

67. Upon information and belief, the BOARD and FRANCE are the recipients of federal funds.

68. Upon information and belief, as the recipients of federal funds, the BOARD and FRANCE are liable for damages to MS. SMITH as a result of their acts and omissions constituting intentional discrimination.

69. As set forth above, MS. SMITH has been denied access to, and has been, and without the relief requested herein will continue to be denied the access to the goods, services, programs, facilities, activities and accommodations offered by the BOARD and FRANCE solely by reason of her disability, and has otherwise been discriminated against and damaged solely by reason of her disability as a result of the BOARD's and FRANCE'S Rehabilitation Act violations set forth above.

70. MS. SMITH has been obligated to retain undersigned counsel for the filing and prosecution of this action, and she is entitled to recover those attorneys' fees, costs and litigation expenses from the BOARD and FRANCE pursuant to 29 U.S.C. §794(b).

71. Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant MS. SMITH injunctive relief including an order to alter the subject premises, facilities, services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed; and, granting MS. SMITH compensatory damages for the BOARD's discriminatory actions.

### COUNT IV: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS AS TO ALL DEFENDANTS

72. MS. SMITH repeats and realleges all preceding paragraphs in support of this claim.

73. At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., (hereafter "LCHR") has been in full force and effect and has applied the conduct of all DEFENDANTS.

74. At all times relevant to this action, MS. SMITH has experienced substantial limitations to several major life activities, including walking, standing, and bending; has suffered an anatomical loss affecting the musculoskeletal system; and has been an individual with a disability within the meaning of the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2232(3)(a).

75. At all times relevant to this action, DEFENDANTS have qualified as places of public accommodation, resort, or amusement as defined by LA. REV. STAT. ANN. § 51:2232(9) by

      virtue of either supplying services to the general public, soliciting and accepting the patronage of the general public, or having been supported directly or indirectly by government funds.

76. The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

77. The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 51:2264.

78. Defendants discriminated against MS. SMITH, on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247, by denying her the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered at the Property.

79. MS. SMITH deems herself injured by the DEFENDANTS' discrimination and brings suit under the LCHR to recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as alleged herein above.

80. MS. SMITH is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR. LA. REV. STAT. ANN. § 51:2264.

## PRAYER FOR RELIEF

      WHEREFORE, MS. SMITH demands judgment against BOARD, FRANCE, SMG, LIVE NATION WORLDWIDE, and TICKET CENTER, and requests the following relief:

A. That this Court declare that the Property owned, leased and/or operated by DEFENDANTS is in violation of the ADA, the Rehabilitation Act, and the LCHR;

B. That this Court declare that the Property, programs and activities owned, operated and administered by the BOARD and FRANCE are in violation of the Rehabilitation Act;

C. That this Court enter an Order directing DEFENDANTS to alter the Property and DEFENDANTS' policies, practices, and/or procedures to make the Property accessible to and useable by individuals with mobility-related disabilities to the full extent required by the ADA, the Rehabilitation Act, and the LCHR;

D. That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit to MS. SMITH pursuant to the ADA, the Rehabilitation Act, and the LCHR;

E. That this Court award damages, including nominal damages, to MS. SMITH pursuant to Title II of the ADA and the Rehabilitation Act for the harm caused by the BOARD's and FRANCE's discriminatory practices, including MS. SMITH's emotional distress, invasion of her civil rights, and for upset stemming from disparate treatment;

F. That this Court award damages to MS. SMITH pursuant to LA. REV. STAT. ANN. § 51:2264 for the discriminatory conduct of the DEFENDANTS in violation of the LCHR; and

G. That this Court award such other and further relief as it deems necessary, just and/or proper under the ADA, the Rehabilitation Act, and the LCHR.

(Signature block on following page.)

Respectfully Submitted,

**Bizer & DeReus**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Jacqueline K. Hammack (LA # 34581)
jhammack@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Jacqueline K. Hammack
　　　JACQUELINE K. HAMMACK