UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NANCY SMITH,**<br>　　**Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-7267** |
| **BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, ET AL.,**<br>　　**Defendants** | **SECTION: "E" (1)** |

### ORDER AND REASONS

Before the Court are (1) a motion for summary judgment, filed by Plaintiff Nancy Smith, on her claims against Defendant SMG;[1] (2) a motion for summary judgment, filed by Smith, on her claims against Defendants the Louisiana Stadium and Exposition District ("LSED") and Kyle France;[2] and (3) a motion for summary judgment, filed by the LSED, France, and SMG.[3] The motions are opposed.[4] In this order, the Court addresses only the parties' arguments regarding Plaintiff's standing to sue for injunctive relief.[5] For the reasons that follow, the Court **GRANTS** Plaintiff's motions for summary judgment, finding she has standing to seek injunctive relief under Title II of the ADA against the LSED and France and under Title III of the ADA against SMG[6] and **DENIES** Defendants'

---

[1] R. Doc. 40.
[2] R. Doc. 41. In her Amended Complaint, Plaintiff named the Board of Commissioners of the Louisiana Stadium and Exposition District as a defendant based on her belief that the Board owned the Mercedes-Benz Superdome. R. Doc. 5. The Court granted her motion to substitute the Louisiana Stadium and Exposition District as a defendant in place of the Board of Commissioners of the Louisiana Stadium and Exposition District. R. Doc. 82.
[3] R. Doc. 45.
[4] R. Docs. 56, 57, 59.
[5] The motions also address Plaintiff's standing to sue for declaratory relief. At the pretrial conference in this matter, Plaintiff's counsel did not include a claim for declaratory relief when he listed the claims remaining in the case. R. Doc. 70. As a result, the Court does not address Plaintiff's standing to sue for declaratory relief herein.
[6] The motions also address Plaintiff's claim for injunctive relief against SMG under the Louisiana Human Rights Act, LA. REV. STAT. 51:2231 *et seq*. At the pretrial conference in this matter, Plaintiff's counsel represented Plaintiff seeks injunctive relief against SMG only under Title III. R. Doc. 70.

1

motion for summary judgment on the same issues. The Court will address the remaining portions of the motions in a separate order.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Plaintiff is an amputee who is disabled within the meaning of the ADA.[7] On April 2, 2016, she attempted to call the box office of the Mercedes-Benz Superdome ("Superdome") to purchase tickets for a Guns N' Roses concert, to be held on July 31, 2016.[8] In reality, she contacted a representative of Box Office Ticket Center LLC, who assured her the tickets she was purchasing were accessible seats compliant with the ADA.[9]

The Superdome is owned by LSED and operated and managed by Defendant SMG.[10] SMG is responsible for coordinating events, including creating seating charts for concerts.[11] Ticketmaster LLC, not Box Office Ticket Center LLC, has the sole and exclusive right to sell and distribute tickets for concerts at the Superdome.[12] SMG identifies accessible seats in its seating chart for music concerts and submits that information to Ticketmaster.[13] SMG's usual practice is to reserve additional ADA-accessible seats in case a customer with a disability, but without a ticket for an accessible seat, requests to be moved to an accessible seat.[14] For the Guns N' Roses concert, SMG reserved approximately one hundred fifty-one accessible seats for this purpose.[15]

---

[7] R. Doc. 69 at 9, ¶ 7(a) (uncontested material facts in pretrial order).
[8] *Id.* at 10, ¶¶ 7(f)–(g).
[9] *Id.* at ¶¶ 7(g)–(h).
[10] *Id.* at ¶ 7(c).
[11] *Id.* at ¶ 7(c)–(e).
[12] *Id.* at 11, ¶ 7(k).
[13] *Id.* at ¶ 7(m).
[14] R. Doc. 45-2 at 4, ¶ 19; R. Doc. 59-1 at 5, ¶ 19.
[15] R. Doc. 45-2 at 4, ¶ 24; R. Doc. 59-1 at 6, ¶ 24.

Plaintiff's ticket originally was bought from Ticketmaster LLC and resold on the secondary market by Box Office Ticket Center LLC. The seat for which Plaintiff purchased a ticket had not been designated by SMG as accessible.[16] When Plaintiff and her daughter arrived at the Superdome on the night of the concert, they sought assistance from a SMG staffer to locate their seats.[17] Plaintiff asked the staffer to remove the existing chair in the space of her ticketed seat to permit her to park her wheelchair in its place.[18] The staffer told her the existing chair could not be removed.[19] Plaintiff expressed safety concerns about her being transferred out of her wheelchair into the existing chair, but eventually agreed to do so.[20] The SMG staffer took her wheelchair, which was returned to her after the concert.[21]

Plaintiff resides in Hinds County, Mississippi, about 180 miles from the Superdome.[22] At deposition, Plaintiff testified she had been to the Superdome ten to fifteen times and that the last time she went to the Superdome before the Guns N' Roses concert was in 2009.[23] She has not returned to the Superdome since the concert.[24] Plaintiff testified she bought tickets to a Bruno Mars concert at the Smoothie King Center, but decided not to go because of her experience at the Guns N' Roses concert.[25] She testified she "would like to" return to the Superdome if she were interested in an event, but there had been no events since the Guns N' Roses concert that had interested her.[26]

---

[16] R. Doc. 69 at 10, ¶ 7(i).
[17] *Id.* at 12, ¶ 7(t).
[18] *Id.* at ¶ 7(u).
[19] *Id.*
[20] *Id.* at ¶ 7(v).
[21] *Id.* at ¶¶ 7(w)–(x).
[22] *Id.* at 9, ¶ 7(b); 13, ¶ 7(ff).
[23] R. Doc. 40-4 at 45–46.
[24] *Id.* at 115.
[25] *Id.*
[26] *Id.* at 118.

3

On July 28, 2017, Plaintiff filed a complaint.[27] She filed an amended complaint on August 20, 2017.[28] The Defendants remaining in the case are SMG, the LSED, and France, in his official capacity as Chairman of the Board of Commissioners of the LSED. Plaintiff brings (1) a claim for injunctive relief under Title II of the ADA against the LSED and France, (2) a claim for injunctive relief under Title III of the ADA against SMG, (3) a claim for damages under Title II of the ADA against the LSED and France, and (4) a claim for damages under the LHRA against SMG.[29] In this order, the Court addresses only the first and second claims, under which Plaintiff seeks injunctive relief.

On December 24, 2018, Plaintiff filed a motion for partial summary judgment as to SMG[30] and a motion for partial summary judgment as to the LSED and France.[31] She argues she is entitled to judgment as a matter of law that she has standing to seek injunctive relief.[32] Defendants oppose.[33] On December 26, 2018, Defendants SMG, the LSED, and France filed a cross-motion for summary judgment on all of Plaintiff's claims, arguing they are entitled to judgment as a matter of law that Plaintiff does not have standing to seek injunctive relief.[34] Plaintiff opposes.[35] With respect to the issue of Plaintiff's standing to seek injunctive relief under Title II of the ADA against the LSED and France and Title III of the ADA against SMG, Plaintiff moves the Court to find she has standing. Defendants move the Court to find she does not.[36]

---

[27] R. Doc. 1.
[28] R. Doc. 5.
[29] R. Doc. 70 at 1–2.
[30] R. Doc. 40.
[31] R. Doc. 41.
[32] R. Docs. 40, 41.
[33] R. Docs. 56, 57.
[34] R. Doc. 45.
[35] R. Doc. 59.
[36] Plaintiff and Defendants both cite the transcript of Plaintiff's deposition testimony. R. Docs. 40-4, 45-2. There are no material facts in dispute on the issue of standing.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] "An issue is material if its resolution could affect the outcome of the action."[38] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[39] All reasonable inferences are drawn in favor of the non-moving party.[40] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[41]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the

---

[37] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[38] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[39] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[40] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[41] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[42]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[43] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[44] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[45] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[46]

---

[42] *Celotex*, 477 U.S. at 322–24.
[43] *Id.* at 331–32 (Brennan, J., dissenting).
[44] *See id.* at 332.
[45] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[46] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

## **LAW AND ANALYSIS**

Plaintiff brings claims for injunctive relief against the LSED and France under Title II of the ADA and against SMG under Title III of the ADA. Plaintiff argues she has standing to bring these claims.[47] Defendants argue that, to establish standing to seek injunctive relief, Plaintiff must show she "will once again purchase non-ADA accessible tickets and then again fail to make a request to SMG to exchange or relocate her tickets to an ADA accessible location."[48] Defendants also argue that, because Plaintiff lives approximately 180 miles away from the Superdome and has admitted she has no concrete or specific plans to return, she cannot show a "likelihood of substantial and immediate irreparable injury," meaning a likelihood she will be denied the benefits of future Superdome events.[49]

The Court notes that, in opposition to Plaintiff's motions for summary judgment on standing, Defendants raise questions concerning the merits of Plaintiff's ADA claims.[50] When determining whether a plaintiff has Article III standing, the Court "must assume *arguendo* the merits of his or her legal claim."[51] The merits of the claim include substantive questions of liability.[52] In the standing inquiry in this case, the Court does not address the issue of whether Plaintiff can prove her case at trial. The Court assumes the

---

[47] R. Doc. 41-1 at 12. In her motion for summary judgment on her claims against the LSED and France, Plaintiff incorporates by reference her motion for summary judgment on her claims against SMG, in which she argues she has standing to seek injunctive relief against SMG under Title III of the ADA, R. Doc. 40-1 at 12–18. Her motion on her claims against SMG does not analyze standing under Title II of the ADA or address whether the analysis under Title II differs from the analysis under Title III.
[48] *Id.* at 13.
[49] R. Doc. 57 at 12.
[50] R. Doc. 56 at 6–9, R. Doc. 57 at 6–11.
[51] *North Cypress Med. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007)); *see also Parker v. D.C.*, 478 F.3d 370, 377 (D.C. Cir. 2007), *aff'd sub nom. D.C. v. Heller*, 554 U.S. 570 (2008) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.").
[52] *See North Cypress*, 781 F.3d at 191 (not addressing liability in the standing inquiry).

merits of Plaintiff's ADA claims and confines its inquiry to whether she has established the elements of standing. As a result, the Court will not address Defendants' arguments with respect to the merits of Plaintiff's ADA claims.[53]

To survive a motion for summary judgment on standing, a plaintiff must "submit affidavits or other evidence showing, through specific facts," that each element of standing is satisfied.[54] In this case, Plaintiff attaches the transcript of her deposition testimony in support of her argument that she has standing to seek injunctive relief.[55] Defendants do not offer evidence contradicting Plaintiff's deposition testimony, and in fact attach the same transcript to their motion for summary judgment.[56] As a result, the Court consults the transcript of Plaintiff's deposition to determine whether she has demonstrated she has standing to seek injunctive relief.

In *Lujan v. Defenders of Wildlife*, the Supreme Court laid out the general requirements for plaintiffs, whether seeking damages or injunctive relief, to establish standing under Article III of the Constitution.[57] "To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[58]

---

[53] R. Doc. 45-1 at 9–10, R. Doc. 56 at 6–9, R. Doc. 57 at 7 – 11.
[54] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992).
[55] R. Doc. 40-4.
[56] R. Doc. 45-6.
[57] 504 U.S. at 560–61.
[58] *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).

8

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."[59]

The only prong at issue in this case is the first prong, injury-in-fact.[60] A plaintiff seeking injunctive relief, unlike a plaintiff seeking damages, must establish more than the existence of a "past wrong" to satisfy the injury-in-fact requirement.[61] Instead, a plaintiff must "show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct."[62]

Title II of the ADA authorizes plaintiffs to seek injunctive relief against public entities generally,[63] and Title III of the ADA authorizes plaintiffs to seek injunctive relief against places of public accommodation operated by private entities.[64] The Supreme Court has not addressed the injury-in-fact requirement under either title. The Fifth Circuit addressed the legal standard for establishing an injury-in-fact for a Title II ADA claim in *Frame v. City of Arlington*.[65] Rather than laying out a separate legal standard for analyzing the injury-in-fact prong of claims for injunctive relief under the ADA, the Fifth Circuit applied prior Supreme Court and Fifth Circuit caselaw regarding the injury-in-fact

---

[59] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).
[60] Defendants base their argument that Plaintiff does not have standing to seek injunctive relief on their argument that she has not shown a "likelihood of substantial and immediate irreparable injury or any realistic intent to return." R. Doc. 56 at 9, R. Doc. 57 at 12. The Fifth Circuit has analyzed the likelihood of irreparable injury and intent to return to a public accommodation under the "injury in fact" prong of the *Lujan* test. *See, e.g.*, *Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F. App'x 336, 341 (5th Cir. 2018) (unpublished); *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011).
[61] *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) ("Past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.'")(quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)) (internal ellipsis omitted).
[62] *Id.* (quoting *Lyons*, 461 U.S. at 109) (internal ellipsis omitted).
[63] 42 U.S.C. § 12133 (incorporating into Title II of the ADA the remedial scheme of the Rehabilitation Act, 29 U.S.C. § 794a, which permits claims for damages and injunctive relief).
[64] 42 U.S.C. § 12188 (incorporating into Title III of the ADA the remedial scheme of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3, which permits only actions for injunctive relief).
[65] 657 F.3d at 235–36 n.100–03. The Fifth Circuit had previously addressed standing in the ADA context in *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308 (5th Cir. 1997). The plaintiff in *Plumley* died before the suit was resolved. *Id.* at 310. The court held the plaintiff could not establish standing to seek injunctive relief because he could not be wronged again. *Id.* at 312.

prong in general. Although *Frame* was a Title II case, it relies for its reasoning on Title III cases from other circuits without suggesting a different standard applies under Title II or Title III.[66] As a result, in this case, the Court relies on *Frame* to analyze Plaintiff's standing to seek injunctive relief under both Title II and Title III.[67]

Plaintiff urges the Court not to rely solely on *Frame*,[68] but instead to follow the Second Circuit's decision in *Kreisler v. Second Ave. Diner Corp.*, which lays out a test for analyzing the injury-in-fact prong for injunctive claims specific to Title III of the ADA.[69] The *Kreisler* court stated that standing under the ADA exists in cases in which "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location."[70] As noted, the Supreme Court has not addressed the legal standard for plaintiffs to establish standing to seek injunctive relief against a public accommodation under Title II or Title III of the ADA, and the federal courts of appeal addressing the issue have adopted varying approaches. Some courts, including the Second Circuit in *Kreisler*, apply an "intent to return" test, requiring plaintiffs to show they intend to return to the place of public accommodation.[71] Others apply a "deterrent effect" test, which is a "broader conception

---

[66] 657 F.3d at 236 n.104 (citing *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (Title III case); *Pickern v. Holiday Quality Foods, Inc.* 293 F.3d 1133, 1136–37 (9th Cir. 2002) (same)).
[67] In its unpublished opinion in *Deutsch*, which was a Title III case, the Fifth Circuit stated that *Frame* was not controlling because it was a Title II case, but proceeded to cite the legal standard from *Frame* and distinguish the facts of *Frame*. 721 F. App'x at 340–41. The *Deutsch* court did not address whether or how the legal standard for standing under Title II differs from the standard under Title III. *Id.*
[68] R. Doc. 40-1 at 13.
[69] 731 F.3d 184, 187–88 (2d Cir. 2013).
[70] *Id.*
[71] *See Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (holding ADA plaintiffs challenging architectural barriers in a building not compliant with the ADA "must at least prove knowledge of the

10

of injury"[72] under which plaintiffs need only show they were deterred from visiting the public accommodation.[73] Still other courts apply a hybrid of the two approaches.[74] The Fifth Circuit has not clearly adopted either test. The Fifth Circuit has not cited *Kreisler*, and only one district court in the circuit has adopted the *Kreisler* test.[75]

In *Frame*, plaintiffs were wheelchair users who alleged certain inaccessible sidewalks "ma[d]e it dangerous, difficult, or impossible for them to travel to a variety of public and private establishments."[76] They sought injunctive relief from the City of Arlington, Texas under Title II.[77] The City argued plaintiffs lacked standing to challenge sidewalks they had not personally encountered.[78]

The Fifth Circuit in *Frame* explained:

> Mere "some day" intentions to use a particular sidewalk, "without any description of concrete plans," does not support standing. But "imminence" is an "elastic concept" that is broad enough to accommodate challenges to at least some sidewalks that a disabled person has not personally encountered. For example, a plaintiff may seek injunctive relief with respect to a soon-to-be-built sidewalk, as long as the plaintiff shows a sufficiently high degree of likelihood that he will be denied the benefits of that sidewalk once it is built. Similarly, a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that an inaccessible sidewalk actually affects his activities in some concrete way. On remand, the district court will be able to apply established standing doctrine to weed out any hypothetical claims. At this point, however, the plaintiffs have alleged in detail how specific inaccessible sidewalks

---

barriers and that they would visit the building in the imminent future but for those barriers").

[72] *Jones v. My Investments LLC of MS*, No. CV 16-1850, 2016 WL 4131284, at *3 (E.D. La. Aug. 3, 2016).

[73] *See Pickern*, 293 F.3d at 1136–37 ("[O]nce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.")). The First Circuit also has adopted this approach. *Ferries Del Caribe, Inc.*, 405 F.3d at 64 ("'[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA' and 'who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA' suffers actual or imminent harm sufficient to confer standing.") (quoting *id.*).

[74] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (holding a plaintiff can establish standing to sue by either demonstrating he was deterred from returning to a facility or demonstrating he suffered an injury by being denied the benefits of a facility, coupled with an intent to return).

[75] *Fultz v. Par.*, No. CV 16-001, 2016 WL 4479517, at *3 (E.D. La. Aug. 25, 2016).

[76] 657 F.3d at 221.

[77] *Id.*

[78] *Id.* at 235.

negatively affect their day-to-day lives by forcing them to take longer and more dangerous routes to their destinations. This is sufficient to support their right to sue.[79]

The *Frame* court did not explicitly adopt either the "deterrent effect" test or the "intent to return" test. However, the Fifth Circuit cited with approval First Circuit and Ninth Circuit cases standing for the proposition that a showing of a deterrent effect is sufficient to establish standing to seek injunctive relief.[80] In light of *Frame*, district courts in the Fifth Circuit have generally adopted the "deterrent effect" test in Title III cases under the ADA.[81] Because the Fifth Circuit has not clearly adopted either test, the Court analyzes whether Plaintiff has standing to seek injunctive relief under Title II and Title III of the ADA under both tests.

### I.     "Deterrent Effect" Test

At deposition, Plaintiff testified that she had bought two tickets for a concert at the Smoothie King Center, adjacent to the Superdome.[82] She intended to go to the concert with her daughter, and she was told over the phone the tickets were for accessible seats.[83] She testified she chose not to go because she was "fearful."[84] When asked to be more specific about what she feared would happen, she responded: "The exact same thing that had happened with Guns N' Roses. It would be hard getting in and out of; the crowd; I would get to a spot, they would take my wheelchair away; the exact same thing that

---

[79] *Id.* at 235–36 (citations omitted).
[80] *Id.* at 236 n.104.
[81] *See, e.g.*, *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 584 (S.D. Tex. 2014) ("The Fifth Circuit appears to have endorsed [the deterrent effect] theory.") (quoting *Kramer v. Lakehills S., LP*, No. A-13-CA-591 LY, 2014 WL 51153, at *4 (W.D. Tex. Jan. 7, 2014)). *Cf. Jones v. My Investments LLC of MS*, No. CV 16-1850, 2016 WL 4131284, at *3 (E.D. La. Aug. 3, 2016) (stating the deterrent effect test is a "broader conception of injury in fact in the ADA context [that] is consistent with the express language of the ADA").
[82] R. Doc. 40-4 at 117.
[83] *Id.*
[84] *Id.*

12

happened at Guns N' Roses or any portion of it."[85] This is sufficient to show Plaintiff was deterred from visiting the Superdome, which has concretely affected her life decisions.

Plaintiff cites the Supreme Court's decision in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, in support of the proposition that she need not "articulate a specific date of expected future injury to have standing for prospective relief."[86] In *Friends of the Earth*, environmental organizations brought suit against the operator of a wastewater treatment plant, alleging the defendant had illegally discharged pollutants into waterways and seeking injunctive relief.[87] The Supreme Court found the plaintiffs had established an injury in fact sufficient to seek injunctive relief because members of the plaintiff organizations had testified that they had used the area close to defendant's facility for recreational purposes, but no longer did so because of the discharges from the facility.[88] The Court held that the defendant's pollution affected the plaintiffs' "recreational, aesthetic, and economic interests."[89] The Court found "nothing 'improbable' about the proposition that a company's continuous and pervasive illegal discharges of pollutants into a river would cause nearby residents to curtail their recreational use of that waterway and would subject them to other economic and aesthetic harms" and further found this sufficient to establish injury in fact.[90] Like in *Friends of the Earth*, Plaintiff in this case has standing because the alleged discrimination affects her recreational interests by deterring her from going to concerts at the Superdome. The Court finds Plaintiff has standing to seek injunctive relief under the deterrent effect test.

---

[85] *Id.*
[86] R. Doc. 40-1 at 17.
[87] 528 U.S. at 176.
[88] *Id.* at 182–83.
[89] *Id.* at 184.
[90] *Id.*

13

## II.    "Intent to Return" Test

Even under the "intent to return" test, Plaintiff has standing to seek injunctive relief under Title II and Title III of the ADA. It is uncontested Plaintiff resides about 180 miles from the Superdome and that she has no concrete or specific plans to return to the Superdome.[91] However, she testified at deposition she had been to the Superdome ten to fifteen times.[92] She also testified she "would like to" return to the Superdome if she were interested in an event, but there had been no events since the Guns N' Roses concert that had interested her.[93] This is sufficient to show Plaintiff had more than "mere some day intentions" to return.[94]

Defendants cite the Fifth Circuit's unpublished decision in *Deutsch v. Travis Cty. Shoe Hosp., Inc.*[95] in support of their argument that Plaintiff does not have standing because she has not shown she intends to return to the Superdome.[96] In *Deutsch*, the Fifth Circuit found the plaintiff did not have standing to sue because he had "not provided a description of any concrete plans to return" to the shoe store, and he had not "shown how the alleged ADA violations negatively affect his day-to-day life."[97] Noting the plaintiff's testimony that he had *never* been to the shoe store prior to the visit in question and had not returned since, the court found he "'perhaps' had an intention of returning to the business but had no specific intention of doing so." [98] Defendants argue the Fifth Circuit endorsed the "intent to return" approach in *Deutsch*. Unlike the plaintiff in *Deutsch*,

---

[91] R. Doc. 69 at 9, ¶ 7(b); 13, ¶ 7(ff).
[92] R. Doc. 40-4 at 45–46.
[93] *Id.* at 118.
[94] *Frame*, 657 F.3d at 236.
[95] 721 F. App'x 336 (5th Cir. 2018)
[96] R. Doc. 57 at 12.
[97] 721 F. App'x at 340.
[98] *Id.* at 340–41.

14

Plaintiff in this case had visited the Superdome on multiple occasions prior to the Guns N' Roses concert and, although she has not made any definite plans to return to the Superdome, she expressed a clear intent to do so. As a result, the Court finds Plaintiff also has standing to seek injunctive relief under the "intent to return" test.[99]

## CONCLUSION

**IT IS ORDERED** that the motions for summary judgment, filed by Plaintiff Nancy Smith be and hereby are **GRANTED IN PART** with respect to Plaintiff's standing to seek injunctive relief under Title II of the ADA against Defendants the Louisiana Stadium and Exposition District and Kyle France, sued in his official capacity as Chairman of the Board of Commissioners of the Louisiana Stadium and Exposition District, and under Title III of the ADA against Defendant SMG.[100]

**IT IS FURTHER ORDERED** that the motion for summary judgment, filed by Defendants SMG, the Louisiana Stadium and Exposition District, and France, be and hereby is **DENIED IN PART** with respect to Plaintiff's standing to sue for injunctive relief.[101]

New Orleans, Louisiana, this 6th day of March, 2019.

                           *Susie Morgan*
                           **SUSIE MORGAN**
                 **UNITED STATES DISTRICT JUDGE**

---

[99] Because the Court finds Plaintiff has standing to seek injunctive relief, the Court does not address her argument regarding her standing to sue because she is allegedly an ADA tester, R. Doc. 40-1 at 18.
[100] R. Docs. 40, 41. Although Plaintiff has standing to seek injunctive relief, the Court has found the LSED and France are entitled to sovereign immunity. R. Doc. 88.
[101] R. Doc. 45.