UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NANCY SMITH,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 17-7267 |
| BOARD OF COMMISSIONERS OF THE<br>LOUISIANA STADIUM AND EXPOSITION<br>DISTRICT, ET AL.,<br>    Defendants | SECTION:<br>"E" (2) |

### ORDER AND REASONS

Before the Court are (1) a motion for summary judgment, filed by Plaintiff Nancy Smith, on her claims against Defendant SMG;[1] (2) a motion for summary judgment, filed by Smith, on her claims against Defendant Kyle France, sued in his official capacity as Chairman of the Board of Commissioners of the Louisiana Stadium and Exposition District ("LSED");[2] and (3) a motion for summary judgment, filed by France and SMG.[3] The motions are opposed.[4] The Court previously has ruled on the portions of the motions regarding the entitlement of the LSED and France to sovereign immunity[5] and regarding Plaintiff's standing to seek injunctive relief.[6] The Court addresses herein the remaining portions of the parties' motions, in which the parties move for summary judgment with respect to Defendants' liability on Plaintiff's claims. For the reasons that follow, the Court **DENIES** the parties' motions for summary judgment with respect to liability.

---

[1] R. Doc. 40.
[2] R. Doc. 41. The motion also addresses Plaintiff's claims against the LSED. *Id.* The Court has found the LSED is entitled to sovereign immunity on all of Plaintiff's claims against it. R. Doc. 90. As a result, the LSED is no longer a party to this matter.
[3] R. Doc. 45.
[4] R. Docs. 56, 57, 59.
[5] R. Doc. 90.
[6] R. Doc. 87.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Plaintiff is an amputee who is disabled within the meaning of the ADA.[7] On April 2, 2016, she attempted to call the box office of the Mercedes-Benz Superdome ("Superdome") to purchase tickets for a Guns N' Roses concert, to be held on July 31, 2016.[8] In reality, she contacted a representative of Box Office Ticket Center LLC, who assured her the tickets she was purchasing were accessible seats compliant with the ADA.[9]

The Superdome is owned by the LSED and operated and managed by Defendant SMG, which is responsible for coordinating events, including creating seating charts for concerts.[10] Ticketmaster LLC, not Box Office Ticket Center LLC, has the sole and exclusive right to sell and distribute tickets for concerts at the Superdome.[11] SMG identifies accessible seats in its seating chart for music concerts and submits that information to Ticketmaster.[12] SMG's usual practice is to reserve additional ADA-accessible seats in case a customer with a disability, but without a ticket for an accessible seat, requests to be moved to an accessible seat.[13] For the Guns N' Roses concert, SMG reserved approximately one hundred fifty-one accessible seats for this purpose.[14]

The tickets Plaintiff bought were originally bought from Ticketmaster LLC and resold on the secondary market by Box Office Ticket Center LLC. The seats for which Plaintiff purchased tickets had not been designated by SMG as accessible.[15] When Plaintiff

---

[7] R. Doc. 69 at 9, ¶ 7(a) (uncontested material facts in pretrial order).
[8] *Id.* at 10, ¶¶ 7(f)–(g).
[9] *Id.* at ¶¶ 7(g)–(h).
[10] *Id.* at ¶ 7(c)–(e).
[11] *Id.* at 11, ¶ 7(k).
[12] *Id.* at ¶ 7(m).
[13] R. Doc. 45-2 at 4, ¶ 19; R. Doc. 59-1 at 5, ¶ 19.
[14] R. Doc. 45-2 at 4, ¶ 24; R. Doc. 59-1 at 6, ¶ 24.
[15] *Id.* at 10, ¶ 7(i).

and her daughter arrived at the Superdome on the night of the concert, they sought assistance from a SMG staffer to locate their seats.[16] Plaintiff asked the staffer to remove the existing chair in the space of her ticketed seat to permit her to park her wheelchair in its place.[17] The staffer told her the existing chair could not be removed.[18] Plaintiff expressed safety concerns about her being transferred out of her wheelchair, but eventually agreed to do so.[19] The SMG staffer took her wheelchair, which was returned to her after the concert.[20]

On July 28, 2017, Plaintiff filed a complaint.[21] The Defendants remaining in the case are SMG and France, in his official capacity as Chairman of the Board of Commissioners of the LSED. Plaintiff brings (1) a claim for injunctive relief under Title II of the ADA against France, in his official capacity, (2) a claim for injunctive relief under Title III of the ADA against SMG, and (3) a claim for damages under the Louisiana Human Rights Act ("LHRA")[22] against SMG.[23]

On December 24, 2018, Plaintiff filed a motion for partial summary judgment as to SMG[24] and a motion for partial summary judgment as to France.[25] Defendants

---

[16] *Id.* at 12, ¶ 7(t).
[17] *Id.* at ¶ 7(u).
[18] *Id.*
[19] *Id.* at ¶ 7(v).
[20] *Id.* at ¶¶ 7(w)–(x).
[21] R. Doc. 1.
[22] LA. REV. STAT. § 51:2231 *et seq*. The parties also refer to this act as the Louisiana Commission on Human Rights or the "LCHR."
[23] R. Doc. 70 at 1–2. The Court has found the LSED is entitled to sovereign immunity on Plaintiff's claims for damages and for injunctive relief against it under Title II of the ADA. France is entitled to sovereign immunity on Plaintiff's claim against him for damages, but Plaintiff's claim against him for injunctive relief proceeds under *Ex parte Young*.
[24] R. Doc. 40.
[25] R. Doc. 41.

oppose.[26] On December 26, 2018, Defendants SMG and France filed a cross-motion for summary judgment on all of Plaintiff's claims.[27] Plaintiff opposes.[28]

In the remaining portions of their motions, the parties request the following:

(1) On Plaintiff's claims for injunctive relief under Title II of the ADA against France and Title III of the ADA against SMG, Plaintiff moves the Court to find Defendants liable as a matter of law. Defendants do not move for summary judgment on this issue.

(2) On Plaintiff's claim for damages against SMG under the LHRA, Plaintiff moves the Court to find SMG liable as a matter of law, but reserves for trial the issue of quantum of damages. Defendants move the Court to find SMG not liable as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] "An issue is material if its resolution could affect the outcome of the action."[30] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[31] All reasonable inferences are drawn in favor of the non-moving party.[32] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[26] R. Docs. 56, 57.
[27] R. Doc. 45.
[28] R. Doc. 59.
[29] FED. R. CIV. P. 56; *see also Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986).
[30] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[32] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

4

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[33]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[34]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[35] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[36] Thus, the non-moving party may defeat a motion for

---

[33] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[34] *Celotex*, 477 U.S. at 322–24.
[35] *Id.* at 331–32 (Brennan, J., dissenting).
[36] *See id.* at 332.

summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[37] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[38]

## LAW AND ANALYSIS

### I. Genuine issues of material fact preclude summary judgment on Plaintiff's claims for injunctive relief.

Plaintiff moves the Court to find Defendants liable as a matter of law on her claims for injunctive relief under Title II of the ADA against France and under Title III of the ADA against SMG. Title II of the ADA prohibits disability discrimination by public entities,[39] including the LSED.[40] Title II provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

---

[37] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[38] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[39] 42 U.S.C. § 12132.
[40] Because France is sued in his official capacity as Chairman of the Board of Commissioners of the LSED, the claim for injunctive relief against him is, in effect, a claim for injunctive relief against the LSED. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") (emphasis in original). As a result, the Court

6

discrimination by any such entity."[41] The Fifth Circuit has listed the elements of a Title II claim as follows:

> To succeed on a claim under Title II of the ADA, a plaintiff must prove: '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' To recover monetary damages, a plaintiff must prove that the discrimination was intentional.[42]

Title III prohibits discrimination by places of public accommodation operated by private entities,[43] including SMG. Title III provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[44] The statute specifies that it is discriminatory to afford people with disabilities "the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."[45] It also specifies discrimination may include:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.[46]

---

[41] *Id.*
[42] *Wells v. Thaler*, 460 F. App'x 303 (5th Cir. 2012) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011), and citing *Delano–Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir.2002)).
[43] 42 U.S.C. § 12182.
[44] *Id.* at § 12182(a).
[45] *Id.* at § 12182(b)(1)(A)(ii).
[46] *Id.* at § 12181 (b)(2)(A)(ii).

To establish a Title III violation, a plaintiff must show "(1) she has a disability; (2) Defendant owned, leased, or operated a place of public accommodation; and (3) Defendant denied Plaintiff full and equal enjoyment on the basis of her disability."[47]

It is undisputed Plaintiff has a qualifying disability.[48] In the pretrial order, the parties agree the following are contested facts:

> a. Whether the SMG staffer who escorted Ms. Smith to her ticketed seats indicated, implied, or otherwise led Ms. Smith to believe that transferring out of her wheelchair and into her ticketed seat was necessary for Ms. Smith to view the concert.
> b. Whether the SMG staffer who took Ms. Smith's wheelchair did so in accordance with SMG's policies for patron wheelchair storage.
> c. Whether Ms. Smith's wheelchair was securely stored during the Concert.[49]

The Court finds these disputed facts are material to the elements of Plaintiff's Title II and Title III claims. On her Title II claim, there is a genuine dispute of fact as to whether Plaintiff was denied the benefits of a program for which the LSED is responsible[50] or she was otherwise discriminated against by the LSED. There is also a genuine issue of fact as to whether the alleged discrimination was by reason of her disability and whether it was intentional. On Plaintiff's Title III claim, there is a genuine issue of fact as to whether Plaintiff was denied the full and equal enjoyment of the Superdome concert. Plaintiff has not met her burden of demonstrating that she is entitled to judgment as a matter of law

---

[47] *Doe v. Ortho-La Holdings, LLC*, No. CV 17-8948, 2018 WL 4613946, at *2 (E.D. La. Sept. 26, 2018) (Milazzo, J.); *see also Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076 (8th Cir. 2006); *Burrell v. Akinola*, No. 3:15-CV-3568-B, 2016 WL 3523781, at *2 (N.D. Tex. June 27, 2016); *Deutsh v. Wehbe*, No. 1-15-CV-702 RP, 2015 WL 6830920, at *1 (W.D. Tex. Nov. 6, 2015); *United States v. Morvant*, 898 F. Supp. 1157, 1161 (E.D. La. 1995).
[48] R. Doc. 69 at 9, ¶ 7(a).
[49] R. Doc. 69 at 13–14, ¶¶ 8(a)–(c).
[50] Regulations implementing the ADA provide Title II "applies to all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102(a). The guidance interpreting this section clarifies that "[a]ll governmental activities of public entities are covered, even if they are carried out by contractors." 28 C.F.R. pt. 35, app. B. As a result, although SMG was responsible for the operations of the Guns N' Roses concert at the Superdome, the LSED is also responsible.

on these claims. As a result, the Court denies Plaintiff's motion for summary judgment on her Title II claim for injunctive relief against France, in his official capacity, and on her Title III claim for injunctive relief against SMG.

II. **Genuine issues of material fact preclude summary judgment on Plaintiff's damages claim against SMG under the LHRA.**

Plaintiff brings a claim for damages against SMG under the LHRA.[51] The LHRA makes it "a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement," on the grounds of disability.[52] A "discriminatory practice in connection with public accommodations" is defined, in relevant part, as "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person" because of disability.[53]

---

[51] LA. REV. STAT. § 51:2231, *et seq*. Plaintiff brought the claim against all Defendants, R. Doc. 5 at 16–17, but subsequently moved to dismiss with prejudice her claim as against the LSED and France, R. Doc. 60, *granted* R. Doc. 62. *See* R. Doc. 70 at 1 (listing remaining claims).
[52] LA. REV. STAT. § 51:2247. The LHRA provides the following definition of disability:

> (3)(a) "Disability" means a physical or mental impairment that substantially limits one or more of the major life activities of the individual, a record of such impairment, or being regarded as having such an impairment. For purposes of all laws which incorporate by reference, apply to, or rely for meaning upon the term disability as defined herein, the terms used in this definition have the following meanings:
>
> (i) "Physical impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.
> . . .
> (iii) "Major life activities" includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

LA. REV. STAT. § 51:2232(3)(a).
[53] *Id.* at § 51:2232(5).

It is uncontested Plaintiff has a disability.[54] The Superdome is a place of public accommodation.[55] As a result, the only issue in this case is whether SMG engaged in a "discriminatory practice in connection with public accommodations" by engaging in "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference" in SMG's treatment of Plaintiff because of her disability.[56]

The Court is aware of no cases, and the parties cite none, interpreting the LHRA's definition of "discriminatory practice" in the context of disability discrimination.[57] The LHRA establishes the Louisiana Commission on Human Rights, which has the power to "adopt, promulgate, amend, and rescind rules and regulations to effectuate the purposes and provisions" of the LHRA,[58] but the Commission has not done so.

Because of this lack of governing legal authority, the parties urge the Court to use the ADA's definition of discrimination in interpreting the LHRA. Plaintiff states that, "to the extent the Court determines that SMG violated Title III of the ADA, then SMG also violated the [LHRA]."[59] Defendants state, "Plaintiff alleges that [her] claim under the [LHRA] is grounded in a violation of the ADA; therefore, for purposes of this Motion,

---

[54] The parties state it is uncontested Plaintiff is an amputee who is disabled within the meaning of the ADA. R. Doc. 69 at 9, ¶ 7(a).
[55] The LHRA defines "place of public accommodation" as "any place, store, or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public, or which is supported directly or indirectly by government funds." LA. REV. STAT. § 51:2232(9). Defendants do not argue the Superdome is not a place of public accommodation.
[56] *Id.* at § 51:2232(5).
[57] Plaintiff cites *Albright v. S. Trace Country Club Of Shreveport, Inc.*, 879 So. 2d 121, 132 (La. 2004), in which the Louisiana Supreme Court found a public dining facilities exclusion of women from an area designated as the "Men's Grille" and restriction of that area to use by men constituted sex discrimination under the LHRA because the LHRA's statutory definition of discrimination is "directly on point." R. Doc. 40-1 at 22. Unlike in *Albright*, the statutory definition of discrimination does not unambiguously prohibit SMG's conduct. As a result, the Court turns to the parties' arguments that the ADA's definition of discrimination applies.
[58] LA. REV. STAT. § 51:2235.
[59] R. Doc. 40-1 at 22–23.

SMG applies law interpreting Title II of the ADA."[60] Neither party offers support for using the ADA to interpret the LHRA.

In determining whether to use the ADA's definition of discrimination to interpret the LHRA, the Court considers the LHRA's statement of purpose. The statement of purpose expresses the legislature's intent

> to provide for execution within Louisiana of the policies embodied in the Federal Civil Rights Act of 1964, 1968, and 1972 and the Age Discrimination in Employment Act of 1967; . . . ; to safeguard all individuals within the state from discrimination because of . . . disability . . . in connection with employment and in connection with public accommodations; [and] to protect their interest in personal dignity and freedom from humiliation.[61]

The Louisiana Legislature passed the LHRA in 1988.[62] As originally enacted, the Act did not prohibit discrimination on the basis of disability.[63] Congress enacted the ADA in 1990.[64] In 1993, the Louisiana Legislature amended the LHRA to cover disability discrimination, but did not change the LHRA's statement of purpose to state it provided for the execution of the policies embodied in the ADA.[65]

The Fifth Circuit has noted the LHRA is "substantively similar to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a)."[66] The LHRA guarantees "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement."[67] Title II of the Civil Rights Act of 1964 similarly guarantees "the full and equal enjoyment of the goods, services,

---

[60] R. Doc. 45-1 at 11–12. Defendants inexplicably cite Title II of the ADA, even though a claim for damages against SMG under the ADA would be under Title III, which governs private entities providing public accommodations, 42 U.S.C. § 12181 *et seq*.
[61] LA. REV. STAT. at § 51:2231(A).
[62] Act No. 886, 1988 La. Acts 2240 (1988) (codified as amended at LA. REV. STAT. § 51:2231 *et seq*.).
[63] LA. REV. STAT. § 51:2247 (1988) (amended 1993).
[64] Pub. L. No. 101-336, 104 Stat. 327 (codified as amended at 42 U.S.C. § 12101 *et seq*.).
[65] Act No. 820, 1993 La. Acts 2143 (1993).
[66] *Semien v. Pizza Hut of Am., Inc.*, 204 F.3d 1115 (5th Cir. 1999).
[67] LA. REV. STAT. § 51:2247.

facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."⁶⁸ Title III of the ADA, which prohibits discrimination by public accommodations operated by private entities like SMG, also guarantees "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" without discrimination on the basis of disability.⁶⁹

Based on the similarities between the LHRA and federal antidiscrimination statutes and the Louisiana legislature's explicit reference to federal antidiscrimination law in the LHRA's statement of purpose, the Court holds the LHRA incorporates the ADA's definition of disability discrimination.⁷⁰ The Court applies the ADA definition to Plaintiff's LHRA claim against SMG. This includes the ADA's requirement of intentional discrimination.⁷¹

The Court has found genuine issues of material fact preclude summary judgment on the substance of Plaintiff's equitable claims against France and SMG under Titles II

---

⁶⁸ 42 U.S.C. § 2000a(a).
⁶⁹ 42 U.S.C. § 12182(a).
⁷⁰ When the Louisiana Supreme Court has not addressed an issue of state law interpretation, the Court must "make an *Erie* guess and determine . . . how that court would resolve the issue if presented with the same case." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir.2003)). When making this guess, the Court "employ[s] Louisiana's civilian methodology, whereby [it] first examine[s] primary sources of law: the constitution, codes, and statutes." *Id*. The Court is confident the Louisiana Supreme Court would also reach the conclusion the LHRA incorporates the ADA's definition of discrimination.
⁷¹ Plaintiff argues, without citing legal authority, that a claim of discrimination under the LHRA does not require a showing of intentional discrimination. R. Doc. 40-1 at 22. Another section of this Court presented with the same issue found "no legal authority indicating that disability discrimination can be considered an unintentional tort under Louisiana law." *Green v. Oceans Behavioral Hosp. of Kentwood, LLC*, No. CV 17-12215, 2018 WL 1604991, at *5 (E.D. La. Apr. 3, 2018) (Vance, J.) (citing *Esparza v. Univ. Med. Ctr. Mgmt Corp.*, No. 17-4803, 2017 WL 4791185, at *14 (E.D. La. 2017) (Africk, J.)). In *Green*, the court noted the ADA's requirement of intentional discrimination and stated it was "not aware of any cases permitting recovery under the [LHRA] absent a showing of intentional discrimination." *Id*. (citing *Semien v. Pizza Hut of Am., Inc.*, 204 F.3d 1115, 1999 WL 1328060, at *1 (5th Cir. 1999)).

and III of the ADA. For the same reasons, the Court finds genuine issues of material fact preclude summary judgment on Plaintiff's damages claim against SMG under the LHRA.

## CONCLUSION

**IT IS ORDERED** that the remaining portions of the cross-motions for summary judgment, filed by Plaintiff Nancy Smith and Defendants SMG and Kyle France, in his official capacity as Chairman of the Board of Commissioners of the Louisiana Stadium and Exposition District, be and hereby are **DENIED**.[72]

**New Orleans, Louisiana, this 7th day of March, 2019.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[72] R. Docs. 40, 41, 45.